## Elmon Hall v. The State.

### No. 9099.   Delivered October 7, 1925.

**1.—Aggravated Assault—Evidence—Held Admissible—As Res Gestae.**

Declarations and acts of persons, at the time and place of the alleged offense, which are so closely related to the acts and conduct of the participants in the affair as to make it apparent that the transaction itself is speaking through these parties, is admissible in evidence, as *res gestae.*

**2.—Same—Evidence—Animus of Witness—Always Admissible.**

Where the evidence on a trial for assault to rape, is sharply conflicting, the preponderance of the testimony being favorable to the appellant, while the state relied for a conviction upon the testimony of the prosecutrix, supported by one Darden, it was error for the trial court to exclude testimony of numerous witnesses, establishing that the relations between prosecutrix and said witness, were to say the least, unconventional, supporting the theory of appellant, that the prosecution was the result of the animus of the prosecutrix, supported by witness Darden because of his relations with her.

**3.—Same—Continued.**

And so it was error to exclude evidence that the witness Darden had given a bad check in payment of a hotel bill of prosecutrix, it occurring to us that this would be a strong circumstance to show that the witness Darden's relations toward prosecutrix were such as to lead the jury to believe that he was not a disinterested witness.   Following Crist v. State, 21 Tex. Crim. App.. 366 and other cases cited.

**4.—Same—Evidence—Held Properly Excluded.**

Where, on a trial for an assault to rape, it was not error to exclude testimony of a physician, that the prosecutrix had been afflicted with gonorrhea at some time, there being no connection between the testimony offered, and the case on trial, and for the same reasons, testimony of a witness that he had seen prosecutrix at her home, drunk, was properly excluded.

**5.—Same—Evidence—Supporting Witness—Erroneously Rejected.**

Where a witness for appellant was severely assailed by the state on cross-examination, and several letters and telegrams passing between witness and the prosecutrix were offered by the state, in an effort to discredit witness by showing him to be unfriendly toward prosecutrix, it was error to refuse to admit a letter offered by appellant, from prosecutrix to the witness, to the effect that instead of being unfriendly toward prosecutrix, that the relations between them were exceedingly cordial.

**6.—Same—Misconduct of Prosecuting Attorney—Highly Prejudicial.**

Where on cross-examination of appellant private prosecutor, referred to the father of prosecutrix, and made the side bar remark, "who was a missionary, and you know it," the court refusing on proper motion to exclude same from the jury. We think it clear that this remark was improper, and may have been highly prejudicial.

**7.—Same—Continued.**

It is a well settled rule in this state, that prosecuting attorneys will not be permitted to supply testimony, unless they are sworn, and take the witness stand. Even if the prosecuting attorney had been testifying as a witness, we think it clear that testimony that prosecutrix' father was a missionary, could serve no purpose in the case, except to inflame the mind of some juror against the appellant, and for the errors pointed out, the judgment is reversed, and the cause remanded.

Appeal from the District Court of Taylor county. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction of an aggravated assault; penalty, a fine of five hundred dollars, and one year in the county jail.

The opinion states the case.

*Ben L. Cox,* and *Dallas Scarborough,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The appellant was convicted in the district court of Taylor county for the offense of an aggravated assault and his punishment assessed at a fine of five hundred dollars and confinement in the county jail for one year.

Stated in very brief form, the facts show that on the evening of July 21, 1924, the appellant and six others went out on a party to a pasture near the town of Abilene; in this party in addition to the appellant were Earl Darden, a barber living in the town of Abilene who was a married man with a wife and two children, Joe Toten, Ruth Smith, the prosecutrix, one Sneed, a boy twenty years of age, Ruby Murrah and Clora Wilson. The record discloses that the Wilson girl was about eighteen years of age and the Murrah girl was about seventeen years of age. The prosecutrix was a young woman twenty-three years of age who had been twice married and was separated from each of her husbands. The participants in this party carried with them two pints of whiskey, some sandwiches, mints and other paraphernalia. The prosecutrix testified that practically all of the parties drank of the whiskey except her and it was the appellant's contention that the entire party, except Sneed, including the prosecutrix, were partakers of this beverage. The prosecutrix testified that when they went out in the pasture where they stopped for lunch

that the appellant assaulted her and forcibly attempted to have intercourse with her and that Joe Toten assisted him in this unlawful enterprise. The appellant claimed that Earl Darden and Toten and appellant became engaged in a fight and that as a result thereof the prosecutrix and the Wilson girl also engaged in a fistic and hair pulling encounter. The appellant denied making any assault whatever on the prosecutrix and accounted for the bruises found on her person by showing that she and the Wilson girl had twice engaged in a fight on that night. He also presented the theory that prosecutrix was infatuated with the married man, Darden, and that on account of the difficulty between Darden, Toten, and others, the prosecutrix sought to vent her spleen against him and other parties who had engaged her friend Darden in the fight. All of the parties who were eyewitnesses to the transaction corroborated the appellant's theory of the case except the witness, Darden, who testified substantially as did the prosecutrix.

Many complaints are made by appellant with reference to matters of procedure in the case. The first two of which relate to the court's action in refusing to change the venue in the case, and in failing to grant appellant's first application for a continuance. As these matters may not arise in the same form in the event of another trial, a discussion of them is not deemed necessary.

Various bills of exception are contained in the record complaining at the court's action in permitting the State to prove what was said and done by the Wilson and Murrah girls at the time and place where the assault is alleged to have been made. Appellant contends that this testimony was not admissible because no conspiracy had been shown between the girl and this defendant, and this defendant was not bound by any act of these witnesses and that same was hearsay and highly prejudicial. We think this testimony was admissible as a part of the res gestae. It was clearly related to the acts and conduct of the participants in the affair as to make it apparent to us that it was the transaction itself speaking through these parties.

Appellant complains at the court's action in refusing to permit him to prove by the witness, Earl Darden, while on cross-examination that he gave the hotel in Abilene a bad check for the purpose of paying the prosecutrix's hotel bill.

Complaint is also made at the court's action in refusing to permit the appellant to prove by the witness Miller and the witness Gaurke that about six weeks prior to the time of the trial on the clear fork of the Brazos river about fourteen miles north of Abilene, that they saw the prosecutrix and the witness Earl Darden in swimming together and that the prosecutrix had her legs up and around his body several times and that she had her arms around his neck hanging on to him, and that there was a log in the water under a big tree and that they were on top of it face to face several times.

There are various other bills of exception in the record presenting these matters in slightly different form and it is the appellant's contention that the testimony showing intimate relations between the prosecutrix Ruth Smith and the witness, Earl Darden, was admissible for the purpose of showing the animus and interest of the witness Darden in the case. As stated above, the witness Darden testified to substantially the same facts as those deposed to by the prosecutrix. The testimony in the case was sharply conflicting and the overwhelming number of witnesses testified to a theory of the case favorable to the appellant. The testimony of the prosecutrix was corroborated alone by that of the witness Darden. It seems that the Court refused to permit testimony on these transactions on the theory that they were isolated transactions and therefore an improper method of attacking the witness Darden. We cannot agree with the view of this matter taken by the trial court. It has been often held by this Court and by other courts that the motives which operate upon the mind of a witness when he testifies are never regarded as irrelevant or collateral matters. It has also been held that the defendant is entitled to show animus or prejudice on the part of the State's witness toward him and its extent, and in such examinations great latitude is allowed when the object is to impeach the credit of such witness. It is also well settled in this State that the animus, motive, or ill-will of a prosecuting witness who testifies to facts hurtful to defendant is never a collateral or irrelevant inquiry, and the defendant may show by such witness, or by himself, or by the others if necessary, why the witness became unfriendly with him. Section 163 Branch's Ann. P. C.

If the conduct described by the proffered witnesses, which is alleged to have transpired in the water a short time before this offense is alleged to have been committed, actually occurred, then we think it was strongly indicative of a relationship between the prosecutrix and the witness Darden,which to say the least was entirely unconventional. In fact, we think no other conclusion can be reached, considering all the circumstances surrounding these parties, then that if they engaged in the conduct described by the witnesses Miller and Gaurke, that their conduct was bordering dangerously close to the licentious. This being true, we think the jury was entitled to have this conduct placed before them in order that it might determine for itself from all the facts whether it believed that under the circumstances the witness Darden because of this relationship toward the prosecutrix would be willing to "sell the truth to serve the hour" in her behalf.

As to the testimony concerning the giving of a bad check to pay her hotel bill, it occurs to us that this would be a strong circumstance tending to show that the witness Darden's relations toward the pros-

ecutrix were such as to lead the jury to believe that he was not a disinterested witness.

We think that practically the identical question was decided in accordance with the views we here express in the case of Crist v. State, 21 Tex. Crim. App. 366, 17 S. W. 260. Sexton v. State, 48 Tex. Crim. Rep. 498, 88 S. W. 348. See also Magruder v. State, 35 Tex. Crim. Rep. 219; 33 S. W. 233.

Appellant also complains because the court refused to permit him to prove by Dr. Cash and Dr. Estes that in January, 1924, they had operated on the prosecutrix for pus tubes and that these pus tubes were always caused by gonorrhea; and because the court refused to permit him to prove by these physicians that the prosecutrix had had gonorrhea at some time. We fail to see any connection between the testimony offered and the case on trial and we think the court was not in error in excluding this testimony.

We also think the court correctly refused to permit the appellant to prove by the witness, Pickard that in September, 1923, he was called to the home of Ruth Smith and found her in a drunken condition that was caused from having drunk intoxicating liquor to an excess. This testimony had no connection in any manner with the matter under investigation and in our opinion was properly excluded.

Complaint is also made at the court's action in refusing to permit the appellant to introduce in evidence a letter written by prosecutrix to Harry Althaver. The witness, Althaver, testified for the appellant and was severely cross-examined by the State and the State had offered in evidence several letters and telegrams that had passed between the prosecutrix, Ruth Smith, and Althaver, whereupon the defendant offered in evidence a letter from the prosecutrix to Althaver for the purpose of showing the relationship between prosecutrix and Althaver and for the purpose of showing that between said parties the best of feeling existed. We have carefully considered this letter and think it should have been admitted in evidence. The State's theory was that the witness Althaver was very unfriendly toward the prosecutrix and offered evidence to this effect. The excluded letter would have tended to controvert this theory of the State and would have been cogent testimony to the effect that instead of being unfriendly toward the prosecutrix that the relations between them were exceedingly cordial.

By proper bill of exceptions, appellant complains that while the defendant was on the stand he testified that at first Ruth Smith refused to drink of the whiskey that the party had, and that then Earl Darden said to her, "Won't you drink for your daddy?", referring to himself, Earl Darden, and that she did then take a drink for Earl Darden. That after the appellant had testified to the above, the Special Prosecutor who cross-examined the defendant said: "You stated at first the Smith girl absolutely refused to take a drink," to which the de-

fendant answered, "Yes, sir." "Until you appealed to her in the name of her father?" to which witness answered, "No, sir", and then the bill of exceptions shows that when the Special Prosecutor without any excuse made the following side bar remark, "Who was a missionary and you know it?" The bill further shows that the defendant objected to this remark and asked the court to exclude it from the jury and the court refused to do so. We think it clear that this remark was clearly improper and may have been highly prejudicial. It is a well settled rule in this State that prosecuting attorneys will not be permitted to supply testimony unless they are sworn and take the witness stand. Even if the prosecuting attorney had been testifying as a witness, we think it clear that this testimony as to the prosecutrix's father having been a missionary was entirely irrelevant and could serve no purpose in the case except to possibly inflame the mind of some juror against the appellant.

There are various bills of exception urged to the remarks of the prosecuting attorney in presenting the case to the jury. Some of these we view as being rather serious, but as they will probably not occur on another trial of the case, a discussion of them is deemed unnecessary.

For the errors above discussed, it is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.