## JACK STILLWELL V. THE STATE.

### No. 9795.  Delivered March 17, 1926.

### Rehearing granted May 12, 1926.

**1.—Murder—Charge of Court—Held Correct.**

Where, on a trial for murder, the evidence for the state establishes a killing without any element of self-defense, there was no error in the court submitting the issue of murder in his charge, notwithstanding the defensive issues presented by the appellant.

**2.—Same—Argument of Counsel—Held Proper.**

Where the evidence disclosed that deceased had been attentive to and frequented the company of the wife of appellant, for more than a year, and that the reputation of the wife of appellant for chastity was bad, and that these facts were known to appellant there was no error in state's counsel, in his argument to the jury, asserting that the wife of the defendant was a common prostitute, and that defendant knew it, and had known it for a year.

**3.—Same—Evidence—Of General Reputation—Properly Rejected.**

Where there is no testimony directly impeaching the defendant upon his trial, there is no error in refusing to permit him to prove his general reputation for truth and veracity.  The fact that a defendant testifies in a case, and his testimony is contradicted by other witnesses, does not bring in issue the general reputation of the witness for truth and veracity. Following Ellington v. State, 48 Tex. Crim. Rep. 392, and other cases cited.

**4.—Same—New Trial—Newly Discovered Evidence—Properly Refused.**

Where, on motion for a new trial, appellant presents evidence claimed to be newly discovered, that deceased was a bad and dangerous man, and no effort is shown to have been made to ascertain the fact before the trial, there was no error in refusing a new trial on this ground.

**5.—Same—Requested Charge—Issue Not Raised—Properly Refused.**

Where, on a trial for murder, the accused found his wife sitting on a

porch in company with deceased and two or three other negroes, there was no error in the court refusing his requested charge that if, at the time of the shooting, he came upon his wife and deceased in such circumstances as it appeared to him that they were engaging in or were about to engage in illicit intercourse, and that under these circumstances he fired the shot he would be justified. The evidence does not raise the issue sought to be presented.

ON REHEARING.

**6.—Same—Impeachment of Accused—General Reputation—Admissible.**

On more mature consideration, on rehearing, we have concluded that we were wrong in holding that the trial court correctly refused to allow appellant to prove his general reputation for truth and veracity. The state, on cross-examination of appellant, had asked him numerous questions as to the killing, which he denied. Afterward, in rebuttal, the state introduced a confession of appellant contradicting his testimony on his cross-examination. While this confession was admissible as original evidence, it was also directly contradictory of his testimony on cross-examination.

**7.—Same—Continued.**

The effect of this confession was a direct impeachment of appellant. One may be impeached in various ways and sustained in as many. Where he is impeached by proof of contradictory statements made by him, he may be sustained by proof of other similar statements, and also by proof of his good reputation for truth and veracity. See Moore v. State, 31 Tex. Crim. Rep. 236, and other cases cited. See also Branch's Ann. P. C., Sec. 181, and authorities there cited.

**8.—Same—Continued.**

Where, however, the state offers no contradictory statements to those made by appellant, but proves as original testimony his declarations and statements, he cannot thereafter sustain himself by proving statements made by himself at another time and place, nor by proof of a good reputation for truth and veracity. Distinguishing Ellington v. State, 48 Tex. Crim. Rep. 392, and White v. State, 42 Tex. Crim. Rep. 575.

Appeal from the District Court of Falls County. Tried below before the Hon. Prentice Oltorf, Judge.

Appeal from a conviction of murder, penalty five years in the penitentiary.

The opinion states the case.

*Nat Llewellyn* and *Terry Dickens* of Marlin, for appellant.

*Bartlett & Dodson* of Marlin, *Sam D. Stinson,* State's Attorney, and *Robt. M. Lyles,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is murder, and the punishment is five years in the penitentiary.

The state's testimony as well as the appellant's confession

shows that the deceased had been going with the wife of the appellant about a year and that appellant had told him and his wife that he wanted them to quit going together and that on the night of the killing, appellant's wife left home and went over to Jim Guy's house and that after she was gone, appellant followed her and on reaching Guy's home found the deceased, appellant's wife, Jim Guy, Jack Johnson and Sam Jones on the porch, and he spoke a few words to other members of the party and proceeded to shoot the deceased twice, killing him.

By bills one and three appellant complains at the court's action in submitting the issue of murder to the jury, it being appellant's contention that the evidence did not raise the issue of murder. We cannot agree with appellant's contention in this regard. Not only did the testimony of the state's witnesses raise the issue of murder, but in our opinion the confession of the appellant also clearly raised this issue.

By bill No. 2, appellant complains at the argument of the district attorney wherein he stated that the evidence showed that the wife of the defendant was a common prostitute and the defendant knew it and had known it for a year. The confession of appellant introduced in evidence shows that he stated therein that deceased had been going with his wife about a year and that he told him and his wife that he wanted them to quit going together, that it might cause trouble. In addition to this there was evidence from other witnesses to the effect that the reputation of the wife of the appellant for chastity was bad. Under this condition of the record no reversible error is shown by the bill.

Appellant complains at the court's action in refusing to permit him to prove by three witnesses that the general reputation of the appellant for truth and veracity was good. A careful examination of the record as well as the qualification of the trial court to the bill raising this question convinces us that the testimony offered by the state tending to discredit the appellant was admissible as original testimony for the purpose of showing his guilt and that it does not come within the rule that authorizes the appellant to make proof of his general reputation for truth and veracity. As correctly contended by the state, the fact that a defendant testifies in a case and his testimony is contradicted by other witnesses does not bring in issue the general reputation of the witness for truth and veracity. Ellington v. State, 48 Texas Crim. Rep. 392. White

v. State, 42 Texas Crim. Rep. 567. Hill v. State, 106 S. W. 145. Rushing v. State, 8 S. W. 807. Rutherford v. State, 67 S. W. 101. McCree v. State, 170 S. W. 280.

Appellant complains also because the court refused to grant him a new trial on the ground of newly discovered evidence. The affidavit of several people in Lee County was attached to the motion for a new trial, which affidavit showed that the deceased bore the reputation of a violent and dangerous man. The qualification to this bill shows that on the hearing of the motion, the appellant admitted in open court that he knew all the time that the deceased had lived in Lee County and knew that the deceased moved to Falls County three or four years ago from Lee County; and that he had heard that deceased had been turned out of jail in Lee County, and that defendant had made no effort to obtain testimony regarding deceased's reputation in Lee County until after his conviction. The court further certifies that counsel could have ascertained from defendant where deceased came from; and further certifies that it was in evidence on the hearing of the motion for new trial that no effort was made prior to the trial to obtain testimony from Lee County. Under this condition of the record, the court was not in error in refusing a new trial.

Complaint is also made at the court's action in refusing appellant's special charge which sought to submit to the jury the issue that if appellant had been informed of the illicit connection of his wife with the deceased and that at the time of the shooting he came upon his wife and deceased in such circumstances as it appeared to him that they were engaging in illicit intercourse or were about to engage in illicit intercourse and that under those circumstances he fired the fatal shot he would be justified. The evidence does not raise the issue sought to be presented. We think it clear from this record viewing all the surrounding circumstances that there was no issue raised by the testimony to the effect that appellant believed or could have reasonably believed at the time of the killing that deceased and his wife were engaging in or about to engage in illicit intercourse. On the contrary the facts are undisputed that he found them in company with some two or three other negroes sitting on the porch and doing nothing that would indicate that they were engaged in or about to engage in illicit intercourse.

Finding no error in the record, the judgment is in all things affirmed. *Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon more mature consideration we have concluded that we were wrong in holding that the trial court correctly refused to allow appellant to prove his general good reputation for truth and veracity by three witnesses named in bill of exceptions No. 4. The record shows that the state, in making out its case in chief, introduced three eye-witnesses to the homicide and rested. Among other witnesses appellant testified in his own behalf and swore that he killed deceased in self-defense. He said deceased had threatened him, and that when he went to the house where the homicide occurred that night, deceased was on a settee on the porch and turned toward him in such manner as caused him to believe deceased was going to kill him and he shot deceased. On cross-examination by the state he repeated that this was the reason he shot, and was thereupon asked if he did not shoot deceased about going with his (appellant's) wife and affirmed that he did not. Asked if he had not made a signed statement to the county attorney in reference to the killing, he admitted he had. Asked if he had not said to the county attorney that deceased had been going with his wife about a year, appellant denied it. Asked if he had not told the county attorney that Dennis McGee told him that deceased stayed with appellant's wife at McGee's house some weeks before the killing, appellant said he did not remember. Asked if he told the county attorney that deceased was sitting on a settee and turned toward him, he asserted that he had.

Thereafter in its rebuttal the state introduced the written statement or confession made by appellant to the county attorney. In same appeared the statements that deceased had been going with appellant's wife about a year; that Dennis McGee told appellant that deceased had stayed with his wife at McGee's home some weeks before; that deceased was sitting on a settee when appellant first saw him on the occasion of the homicide, and that he shot deceased because he was going with appellant's wife, that deceased was doing nothing when shot save sitting on the settee. After the introduction of this confession by the state appellant offered three witnesses by whom he expected to prove that his general reputation for

truth and veracity in the community was good. This was rejected and is the action of the court complained of. The bill is qualified by the learned trial judge who states that in his opinion there was no necessary conflict between the testimony of appellant as given on the stand, and his confession which was introduced in rebuttal, save as to his reason for shooting deceased—but if there was such difference, the conflicts were but mere contradictions and same were not impeaching; also that the confession was admissible as original testimony if same had been offered in chief, and was in fact admitted as original testimony and not on any theory of impeachment. As part of his qualification the court cited Ellington v. State, 48 Texas Crim. Rep. 392, and White v. State, 42 Texas Crim. Rep. 575. We are not able to apply the principle in either of said cases as authority for the court's rejection of this testimony. It must be borne in mind that one may be impeached in various ways and sustained in as many; and that one who is impeached by proof of contradictory statements made by him, may be sustained by proof of other similar statements. Moore v. State, 31 Texas Crim. Rep. 236, and authorities cited in Branch's Ann. P. C., Sec. 181; also by proof of his good reputation for truth and veracity. Dixon v. State, 15 Texas Crim. App. 272; Anderson v. State, 34 Texas Crim. Rep. 550, and authorities cited by Mr. Branch in Sec. 184 of his Annotated P. C.

In the White case, supra, the facts disclose that a defense witness named Rich swore that the first shot fired by appellant killed deceased; that the state then put on other witnesses who swore that Rich told them that the second shot killed deceased. Appellant then sought to introduce witnesses to whom Rich had said that the first shot was the fatal one, but the trial court rejected this last offered testimony. We held this action erroneous. This was manifestly correct. The defense had the right to support the credibility of its witness Rich, who was impeached by proof of statements contradictory to those made by him on the witness stand, by proof of statements at other times and places similar to those given by him on witness stand.

The opinion in the White case also correctly held that the state having shown as part of its case in chief that the accused told parties that he killed the deceased with the second shot, and that defendant having thereafter taken the stand in his own behalf and testified that he killed deceased with his

first shot, he could not support himself by proof by other parties that he told them that he killed deceased by his first shot. The clear distinction is that in such case the state offers no contradictory statements to those made by appellant, but proves as original testimony his declarations and statements, and that he can not thereafter put his character in evidence by testifying in his behalf to facts contradictory to those offered by the state. There is a vast difference between the principle involved in the two rulings of the court in the White case just mentioned. The Ellington case, supra, is illustrative of the same point. The state there introduced against the accused as part of its case in chief, statements made by him with reference to the crime. He took the stand and swore to the contrary and then offered witnesses to prove that they had heard him make statements in consonance with his testimony. Denied the testimony of these witnesses, he brought the question here for review, and we upheld the trial court. Discussing the authorities cited by appellant in that case, however, we said:

"All of these cases are authority for the proposition that where appellant is put on the witness stand, and the state has impeached such witness by showing that he made a different statement to that testified to by him upon the point in issue, that it is competent for appellant in rebuttal to show that he made a similar statement to that testified to by him about the time of the transaction, in order to corroborate the witness."

Not only was appellant in the instant case impeached by the contents of his written confession as to the reason and cause which led to the killing, but also as to other matters which he was specifically and pointedly asked about on his cross-examination and denied having said. The state had not offered the confession as part of its case in chief, nor as original testimony, but waited until it had thus cross-examined appellant and then offered his former statements which were directly contradictory to his testimony. This is not the same principle as in the White and Ellington cases, but is altogether different. Appellant was impeached. The state did prove contradictory statements made by him, and under all the authorities he had the right to sustain himself either by proof of similar statements or by proving his general good reputation in the community for truth and veracity.

A careful review of the facts does not lead us to conclude

that the testimony of appellant or that of any other witness was sufficient to justify the court in instructing the jury that appellant should be acquitted if he killed deceased because he was taken in adultery with appellant's wife. Said wife testified for appellant and did not claim to have been in flagrante delicto with deceased. Appellant in his testimony did not assert that he believed them so engaged. None of the other witnesses who were on the porch where the killing took place gave testimony supporting such proposition. While the testimony seems to strongly support the theory of manslaughter, we find nothing therein leading us to conclude that the court should have submitted justifiable homicide on the theory that the wife of appellant and deceased were engaged in criminal intercourse with each other, or that appellant so believed at the time he fired the fatal shot.

For the exclusion of the testimony above mentioned which we conclude to have been error, appellant's motion for rehearing will be granted, our judgment of affirmance will be set aside, and the judgment now reversed and the cause remanded.

*Reversed and remanded.*